May it please the Court, my name is Daniel Aronson along with co-counsel Gary Edinger. We represent the appellants who I will be referring to as Cheshire. Cheshire filed five issues on appeal that we believe that the District Court got wrong when it made its summary judgment ruling. The first one that is that the District Court was incorrect when it ruled that race judicata prevented or barred the appellants from raising the issues on to of the constitutionality on overbreadth grounds to the definitions of adult bookstores and adult mini motion picture theaters. Secondly, the District Court was wrong when it ruled on standing grounds that Cheshire could not raise the constitutionality to the definition of an adult entertainment establishment. Thirdly, the Court erred when it determined that Cheshire needed to follow Georgia state law as opposed to federal procedural law in ruling on its of certiorari. And fourthly, the District Court was incorrect when it determined that Cheshire had lost its legal non-conforming use status or never had a legal non-conforming use status when it expanded that legal non-conforming use. And fifth, that the injunction that the Court issued was overbroad, vague, and unenforceable under federal law. You've got five issues. Which is your strongest issue on appeal? Excuse me, Your Honor? What's your strongest issue on appeal? You've got a lot of issues here. In all due respect, we should be winning on all five issues. What I'd like to address first is the one that deals with the non-conforming use status or the forfeiture of the non-conforming use status. And that's factually driven. In 1997, in December, Cheshire, December 2nd, in fact, of 1997, Cheshire, excuse me, 1996, Cheshire applied for a business license to be an adult, to be a retail store that was allowed to sell adult novelties and an adult videos. They had noticed that the code for Atlanta did not provide, in its definition of an adult bookstore, the terms adult videos or adult novelties in it. Therefore, they were entitled to get their business license for an adult, for a retail store selling adult videos and adult novelties. Was it your client who testified that the video mini theaters were in operation from the beginning, or at least from at least February of 1998? My understanding, that was the testimony. We're getting a little sidetracked, and excuse me if I'm sounding slippy. Well, your non-conforming use is the issue, so was he, was the business conforming with the Georgia municipal statute at that time? Yes. If they had an adult mini theater in operation? And let me explain why the answer is yes to that. Under Georgia law, which is part of the landowner's rights, that once the occupational or the business license is issued, that vests the landowner with rights. So therefore, when they got the license in, I believe it was November of 1997, when they got that license, they were vested as a legal non-conforming use. Well, that's the question, though. Were they conforming if at that time they were? Those were the booths, right? That's the mini theater? Yes. Okay. At that time, were they in conformance with the law? Yes, because they don't open up until February of 1998. Okay. They got the license in 1997. Under Georgia law, you vest with your, they vested with your legal non-conforming use status in 1997, and therefore, when they open up in 1998, even if they've expanded that legal non-conforming use, they still are a vested right because it's the issuance of the license. At that second, the second they got that license, they are a legal non-conforming use, and they are vested, and what happens later on does not take away. Vested to do what, though? That's what I'm struggling with. You say adult videos. Were they selling adult videos? Yes. Okay. But they were also displaying videos in these booths, thereby operating a mini theater. Does that make a difference under the Georgia code? No, it doesn't because, and maybe we're not talking the same, but they did not open on the day or the minute that they got the occupational license. No, no. I understand, February of 1998. Right. But my question, and maybe I'm not making my question very clear, but my question is, if you apply for a business license to sell adult novelties and to sell videos, is that different under the municipal ordinance from operating an adult mini theater, which consists of viewing booths where patrons watch the videos in the booth? Yes, it is different, but they did both. Is it different? Therefore, is it covered by the 1997 license? That's the question I'm wrestling with. And I'm not arguing that it is. What I'm arguing that they were vested to sell adult videos and adult novelties when they got the license. I am not arguing that they were vested to open up an adult mini motion picture theater. But were they out of conformance in February of 1998 when they started displaying adult mini theater videos? Well, the answer to that is yes and no, and, of course, that's an ambiguous answer. Yes and no? It can't be either, counsel. It's got to be one or the other. Actually, it can be, if I can explain. Okay, all right. The court found, first of all, the expansion to the adult mini motion theater. We have contested that that's an issue under Atlanta law that should have been resolved on the appeal of the certiorari issue that went up. Putting that aside, yes, it's an expansion of a legal nonconforming use under the way the court ruled. But that is irrelevant to whether or not they were a legal nonconforming use prior to that expansion. And what we're saying is even if they were, the proper remedy under Georgia law is not forfeiture of the legal nonconforming use. The proper remedy under Georgia law is a rollback. And the district court, at a maximum, what it should have ordered is, Cheshire, you expanded your legal nonconforming use. What you need to do now is I'm ordering that you roll back to just selling adult videos and adult novelties. We're not arguing that. Close the mini theater. Close the mini theater. Okay. Exactly. So that's what should have happened. Because under Georgia law, there's only two ways to lose your legal nonconforming use. And one is abandonment, which they certainly did not abandon. They are still selling adult videos and adult novelties, so they've never abandoned that use. And you also can lose it if you become a change your business to one that conforms to the zoning district that you're in. They haven't done that either. So, therefore, there's still a legal nonconforming use as to adult videos and as to adult novelties. I had a long presentation. I want to go through all five. I've already used up a lot of time. I'd like to go to the injunction that was issued in this case. The injunction that was issued in this case is tantamount to obey the law injunction. What the district court did was it took snippets of the Atlanta statutes, put it on paper, and then said obey it. The district court could have easily have just said, you know what, just obey statute or ordinance such and such, or could have just written down the statute number. It is a fatally defective injunction, but there's wording in that injunction that really shows how fatally defective it is. In the injunction, Cheshire is not allowed to charge money directly or indirectly for patrons to use devices or equipment. Under the Atlanta ordinance, devices and equipment are not defined. In the injunction, devices and equipment are not defined. Now, the city is going to say. But they wanted to operate a club, right, and they had furniture for want of a better term. Well, why isn't that clear enough in the injunction that you can't do that? Well, it doesn't say you can't do certain acts. It says you can't have people touching these equipment. So I asked the court, I ask anybody, what can Cheshire have? We may know that we can't have those crosses that are used for people to be on its sexual crosses. So furniture, was that the term? But furniture. Can we have a chaise lounge? Can we have a love seat? A chaise lounge covered with leather? It's irrelevant. I understand the court's. I mean, isn't it sort of a common sense reading of the court's injunction? I mean, what more would you have the court write into the injunction to clarify the scope of the injunction? The Rule 65 says, point blank, it has to be definite and precise. So I ask, again, the court, what can we have? That's the problem with that injunction. It doesn't tell us what, or it doesn't tell Cheshire what they can have. We may know what we cannot have, but we'll never know under the wording of that injunction what we can have. And without knowing what we can have, it stops anything from being there. Like I said, exercise equipment. Does it stop us from having that? Even a keyboard because you can't come in contact with it. So it's not definite to let us let Cheshire know what they can have. It doesn't tell the Cheshire that it can't provide customers with devices and equipment that can be expected to be used for sexual purposes, period? No offense to this court, but in other cases and in reality, what can't be used in a sexual connotation? I mean, I don't want to get graphically disgusting or anything like that, but I'm holding a pen. It has been used at times as a sexual device by people. There is nothing that you can think of that has not been used as a sexual device by some person with some proclivity. So just to say that sexual devices doesn't tell us what. Certainly they should be allowed to carry a pen up there or have a pen up there and somebody be able to use it, but that could be used by another person as a sexual device. We do not know, Cheshire does not know what it can't have up there, and that's the problem. Counsel, before you sit down, I would be interested to hear your argument on the race judicata issue. Well, the race judicata, in 1998, Cheshire filed a federal lawsuit for damages. It was under several theories of law, but it was a suit for damages, and it was because it took a year for them to get open after they filed for their application. So they filed a lawsuit, and they do not challenge the definitions of adult bookstore, and they do not challenge the definitions of adult mini motion picture theater. Why? First of all, practically it made no sense to. It wasn't being applied to them. But from a standing standpoint, they did not have standing. It's not being applied to them, so there's no injury in fact, or no threat of injury or imminent threat of injury. In fact, those ordinances or those definitions are not applied to them for 16 years, so therefore they don't have standing. There's no redressability. If, in fact, they get a decision that's favorable to them, what do they get? They get to be left alone like they've been left alone. So there's no standing, therefore the court was incorrect when it ruled on race judicata that in fact that Cheshire should have brought it in 1998, because if they brought it in 1998, they get dismissed for standing. And that then turns to the second issue on the adult entertainment establishment, because the court ruled they didn't have race judicata prevented them from challenging the adult bookstore and the adult mini motion picture theater. They couldn't get redress on the adult entertainment establishment, so the court said it didn't have standing. So if the race judicata argument is ruled in our favor, then also the adult entertainment argument that the court said we couldn't raise that because we didn't have standing, Cheshire would have had standing. Why isn't the adult entertainment establishment, why isn't that just a definition in a zoning ordinance that governs the location of adult businesses? Excuse me, I didn't hear you. I'm sorry. The definition of adult entertainment establishment, it's just a definition in a zoning ordinance, right? Right, but it's used to determine where Cheshire can open and where it cannot or where it can operate. And because of that, it's being used against them to shut them down. So it's not just a definition. Because of that definition, it brings in the lawsuit, it brings. It's conduct. Excuse me? Adult entertainment establishment. I'm sorry, Your Honor, I'm not hearing you. The adult entertainment establishment language in the ordinance. Yes. It doesn't ban any conduct, does it? It is definitional and it doesn't ban conduct, but it defines conduct or it defines actually speech in a way that is overbroad. In fact, that definition would prevent, under that definition, ballets, theatrical performances, fleeting nudity, as it's called. Any place that had that would be called an adult entertainment establishment. So it encompasses a tremendous amount of protected speech, and because of that protected speech, it's overbroad because there's speech that courts have said you can't ban under adult entertainment, it's irrelevant to adult entertainment, and that's encompassed in it. But it's a definition that then is used to shut down Cheshire. Gotcha. Let me ask you another, may I? Do you understand your overbreath claim to encompass the definition of adult cabarets? That is one that I'd have to answer this way. We challenged adult business. Adult business has four subgroups to that, adult entertainment establishment, adult cabaret, adult bookstores, and adult mini-motion picture theaters. We've attacked them all. The city has put in their summary judgment and their counterclaims that we are attacking adult business. Does Cheshire's business fall under the definition of an adult cabaret? Does ours? No, it does not. Then how are you challenging that definition? I'm not going to defend that challenge at this stage. My point is that when you challenge the definition of adult establishments, how is the city supposed to know which particular definition? In other words, you're saying your overbreath claim goes to the entire definition. No, when I was arguing overbreath just a minute ago, that's the adult entertainment establishment. Adult business is the umbrella of it. But I thought your argument was that your challenging adult establishment was sufficient to also challenge the mini-theater definition as well as the adult movie theater definition. Each one of them are challenged under individual definitions and the whole umbrella. The adult entertainment establishment, I just went through the three reasons why it's overbroad. An adult mini-motion picture theater, it's only limited to the showing of a movie that would be showing specified anatomical areas. It's not regularly shows or usually shows. If you show it once, then you become an adult mini-motion picture theater. Therefore, that's overbroad. Further, the definition of specified anatomical areas that they're all predicated on is the showing of the female breast below the top of the areola. There is no exception for clothing attire such as bathing suits. I understand your argument, but I don't see that in what you've challenged. All I see is adult entertainment establishment. No, we've also challenged the adult bookstore definition. That was the race judicata argument that the court found that we could not present it because of race judicata. Also, the mini-motion picture theater, that was also the race judicata decision by the court. So, we challenged adult bookstore, adult mini-motion picture theater, and we also challenged the adult entertainment establishment. They're all part of adult businesses. If one leg of the stool falls, then they all fall. Thank you, Mr. Aronson. We'll hear from Mr. Berkthal. Good morning, Your Honor. Scott Berkthal on behalf of the Appalooza City of Atlanta. We ask that this court affirm the judgment below. The court's rightly noted there's five issues raised on appeal. Absolutely none of them have any merit whatsoever. Well, what about the race judicata issue? That one concerns me. Okay. Your inspectors, the licensing inspectors, took no action for 16 years. No violation notices were issued, no citations. So, how could Cheshire have been expected to challenge the constitutionality when there was no enforcement proceeding? Your Honor, there was no record evidence that the city knew about the booths in the basement at the time that they opened the establishment. How could your inspector miss that? I mean, did they just not go downstairs? Well, no. What happened is the record shows they went down in December of 1997 when they had filed for the business license application. At that time, they went into the basement, and there were boxes and some storage there. But the business didn't open for another three months. So the business came along in February 21, 1998, and opened its store. And Mr. Morrison told us in his deposition that he illegally did the adult mini motion picture theater from the beginning. So that's why. From the beginning, meaning February of 1998. That's the day they opened the store. Okay. That's right. That's also, if I could, Your Honor, Judge Tallman, I'd take the race judicata claim or I can go to the lawful nonconforming use. Whichever you want, yeah. They kind of relate together. And let me just do them in the order the appellant's counsel did them because I think that might make a lot of sense. First of all, they illegally operated an adult business, an illegal adult business, from the beginning. So they cannot establish a lawful nonconforming use. And my opposing counsel is confused about the difference between vested rights and lawful nonconforming uses. There are two separate doctrines under Georgia law. And it is absolutely wrong to say that when you file for a business license application, that you have a vested right or a lawful nonconforming use to do something later. And here's what happened. On December 2, 1996, well, back up, on November 27, 1996, Mr. Morrison, who's a frequent flyer in this court, we've had three cases here in the last 18 months on similar facts where an adult business opened up saying they weren't going to do an adult use. And that's what the letter from 1997 was. We're not going to do magazines or print media that would make us an adult bookstore. We're not going to do the video booths. That's what he explicitly told the city. A week later, when he filed his application on December 2, 1996, that's what he applied for, only DVDs and novelties, things that were outside the code at that time. Five hours later, the city of Atlanta adopts a new zoning ordinance that includes those items. And the business license officials denied the license. They sued in Fulton County Superior Court. If you look at that four-page opinion, it's in the record at R37-4. It's in Volume 2 of our supplemental appendix. The Fulton County Superior Court did not use the word grandfathering, did not use the word lawful nonconforming use, did not use the word nonconforming. It said, under Georgia law, you have the ability, when you file an application, to have your application determined as of the law that existed at the time that you filed so that the zoning amendment passed five hours later would not apply. He did not grant them any use. He said, go back to the city business license department, and I'm remanding for a determination of whether your application met the requirements of the code at the time that it was filed. That has nothing to do with lawful nonconforming uses. Under Georgia law, a lawful nonconforming use is one that came into being and actually commenced lawfully as a legal use and then became nonconforming as a result of a subsequent zoning amendment. In the Cory Outdoor case, the Supreme Court of Georgia said, nonconforming uses are uses of structures which were existing. The actual use of the property was existing prior to the enforcement of an ordinance, rendering them nonconforming. More importantly, a use which is merely contemplated for the future but unrealized as of the date of an effective date change in the zoning is not a nonconforming use, and that's the North Georgia Mountain Crisis Network case. So they want to rely on what they got as far as a license and the Fulton County Superior Court order. All that did was say, go back and see if the application you filed a year ago on December 2, 1996, met the ordinance requirements at the time. The fact that they opened up in February of 1998 and absolutely did illegal things that were always classified as adult businesses, going back to the 1987 code, like the adult mini motion picture theater, that's why Judge Thrash said, you have no lawful use. You didn't commence lawfully. In fact, he relied on Troutman v. Aikman. The Georgia Supreme Court case says that a lawful nonconforming use does not arise when the initial use is illegal. So all the authority that he cited proved that they were unlawful from the very beginning, and that's why they never established a lawful nonconforming use. Mr. Aronson wants to talk about expansion. Look at the district court's opinion. It doesn't even mention the word expansion or expand. It doesn't appear in there. This was not an expansion of a lawful nonconforming use. This was an illegal use from the day they commenced actually using the property in February 1998. It didn't matter that they lied about what they were going to do and then they got a business license to do that limited thing. The fact is when they opened, they did what was always an adult business going back to 1987 and prohibited that location under the code. That's why the district court properly found that they'd never established a lawful nonconforming use of any kind. And even if they had started as a lawful use, the Atlanta Zoning Code says you can only maintain a lawful use against a later enacted zoning ordinance if it remains otherwise lawful. So they did a lot of, you know, they've been unlawful from day one and so they never had a lawful use. And then they told us they ran a lingerie modeling for about five years, which is an adult cabaret that was illegal there, and that stopped. So the bottom line is they never, all their authorities, all the Treasurer Vigil's authorities in their brief are distinguishable because the uses in those cases commenced lawfully. And then there were later zoning changes. So basically the district court decision did not give them what they said it did from the trial court, the Fulton County Superior Court. Now I would like to turn to the injunction. Because Treasurer Vigil's has no lawful nonconforming use, it is subject to the current code and the injunctive relief that the district court initiated. They do not challenge on appeal the prohibition in the injunction against operating an adult mini motion picture at the site or the adult bookstore at the site. Those are specifically defined in the injunction order, and it's not just a verbatim copy and paste. It uses terms, which is obvious because the law pursuant to which the injunction issued is an ordinance, but it gives them specific things not to do. And the prohibition against operating an adult entertainment establishment is limited to where they charge a patron a fee to engage in personal contact with the devices or equipment provided by the establishment. Those terms are rather vague, aren't they? I mean, your counsel makes the argument that anything could be a device or equipment that can expect it to be used for sexual purposes, even a fountain pen. Well, actually, Judge Wilson, when you mentioned to my opposing counsel that it has to be read as common sense, that's exactly what this circuit's case law says. This circuit's case law says that an injunction that contains an operative command capable of enforcement is valid under the global versus SEC case. This circuit, quote, will not apply Rule 65D rigidly. So what the court's cases say to look at to determine the viability of the injunction is you look at the context of the order that resulted in the injunction. That would be the 28-page summary judgment order. You look at the totality of the language in the documents and the orders from the district court, and then you look at the circumstances that led to the issuance of the injunction. We have that. But we've repeatedly said you can't have an obey-the-law injunction, and as I read this injunction, it simply refers back to the statutory language. No, Your Honor, it doesn't in this sense. It has a paragraph that says here are my findings. The summary judgment order said here are the findings, here's why you're an adult business under these various subcategories, adult bookstore, adult mini motion picture, adult entertainment establishment. And then in the injunction order, he makes specific findings about how they're doing these types of things.  You can't operate this kind of establishment as described above. And if we look under this court's case law at the totality of the circumstances, he tells us on page 24, footnote 80 of the summary judgment opinion. That's record entry 81 in the appendix. It specifically says what is prohibited. It says that Cheshire Visuals is an adult entertainment establishment because they offer bondage and domination, furniture and equipment for customers to use, including a cage, a swing, a stockade, and other devices to restrain a person in various positions. That informs the injunction. That's what he's prohibiting. That's what made them an adult entertainment establishment. If they stop doing that, they don't violate the injunction. They can do it in two different ways. Number one, they can stop offering access to those by just taking that sexual furniture out of the store. That's easy to obey. Mr. Aronson suggests that an injunction has to tell you everything that you can do. That's backwards. An injunction says what you can't do. And so what they can't do is offer these sexual furniture devices for a fee. So to comply with the injunction, it's very simple. They can stop offering those by taking them out of the establishment, or they can stop charging a fee to that portion of the establishment. Remember, there's two entrances. There's a front entrance and a back entrance. There's a cover charge to get you to the back entrances, which has the peep show booths and all these sexual furniture devices. If they did what they did at the front entrance, and that is not charge a cover charge or a fee to get into that portion of the establishment, if they did that at the back entrance, they're in compliance with the injunction. It certainly has an operative command that is capable of enforcement and therefore is certainly not overbroad because this doesn't deal with speech. None of this is inherently expressive activity. So the judge's summary judgment order informs the injunction order and makes it clear what is prohibited. There's an operative command. And that's all the city would move for contempt on. If they continue offering the St. Andrew's crosses and the spank benches and the stockade, okay, that may trigger the issue. But if they get rid of those, it's no problem. Now I'd like to address Judge Holliman's questions about the res judicata issue. The question in the res judicata in Georgia law and in federal law is whether the plaintiff could have brought a claim in December of 1998. That was the last filed prior federal lawsuit. There was one in December of 1997. They absolutely could have brought a challenge to the adult bookstore definition and the adult mini motion picture definition when they filed that suit in December of 1998. Remember, at that point they had already been open for ten months going back to February 21 of 1998. The adult bookstore, the city, why could they have challenged the adult bookstore definition? Well, the city used the adult bookstore definition to deny the permit in December of 1996. And then remember, a year later, the city voided a building permit that they had initially issued in error because it had video booths on the diagram, on the floor layout, and then it had magazines and videos. So the city enforced the adult bookstore definition from the prior code, which was print media, and also enforced the adult mini motion picture definition from the prior code, which was the peep show booths, and said you can't do these in December of 1997 before they opened three months later. And so they were very much on point that the code prohibited them. Even the preexisting 1987 code prohibited them from doing what their paperwork in 1997 after they won the superior court order to have the application processed under the prior law. They submitted something that indicated they were going to go beyond that and do something that's always been defined as an adult business, and the court voided that, or the city voided that. And then, most fundamentally, or on top of all this, they actually sold print media, magazines, sexually explicit videos from the beginning, or sexually explicit magazines, rather, from the beginning. So they were under the adult bookstore definition in February of 1998 when they opened, and they also told us that they ran the illegal peep show booths from the beginning, from February of 1998. So when they filed their federal lawsuit ten months later, in December of 1998, they obviously knew they were doing that which was prohibited by the code. So you're saying they would have had standing at that point, based on the fact that they were engaging in conduct that the code says is illegal, and they could have alleged to establish standing, that we fear that the city may take enforcement action against us under this ordinance, therefore, that is a significant enough injury that we should be permitted to challenge its constitutionality. Sure. This is a whole new, this standing argument is a whole new argument on appeal. And it's not an actual standing argument. It's a defensive argument against a restitutacata judgment or decision. It's not like an actual standing that you can raise any time. I think it's waived because they didn't argue this below. We wouldn't have had rightness. We wouldn't have had standing. But the city had already enforced those adult bookstore and video, adult mini motion picture theater definitions against them by voiding the building permit that on the schematic indicated they were going to do those things. And then they enforced the entirety of the adult business definition because when they issued the actual building permit, it said, this location is not allowed for an adult business. So they come along in their appellate brief for the first time. They say, oh, there was no evinced intent to violate the law, and therefore we wouldn't have had rightness. There was intent. They were actually doing it. They were actually doing a peep show booth operation that was always illegal. They were actually doing magazine sexually explicit video sales that were always illegal. So they never had a nonconforming use, and they were barred by restitutacata. And then finally, if I could address the overbreath claim real quickly. There's no there there. The district court probably rejected the overbreath claim because it only went to a portion of the adult entertainment definition that does not apply to them. It went to lingerie modeling, which they have not done for more than a decade and have no intent to do, and then it went to movements or some kind of live entertainment of movements of a sexual nature, which Mr. Morrison told us in his deposition, no, we don't do that. We haven't done that for years. So there was no injury in fact. That's why he said there was no standing. Separately, there was no redressability because if there was some claim that could prevail against the adult entertainment establishment definition, you still are barred because you're an illegal adult business at that site within 500 feet of a residential zone because you're doing the adult mini motion picture theater, the peep show booths that have been illegal from the beginning. And then, Judge Wilson, you had it exactly right. This doesn't ban anything. This isn't an overbreath case. They don't do new dancing, but this doesn't even ban new dancing. It's a location rule under a zoning ordinance. And I see that my time is up. I would just ask that this court affirm the well-reasoned judgment of the district court below. Thank you. Counsel? This court in Crown Media v. Winnette County stated, Georgia courts have concluded that property rights vest when a permit is actually issued for a particular land use. But if the permit was issued solely for adult books and adult novelties. And videos. And videos in December of 1997. And in February of 1998, your clients began doing things that were prohibited under the statute. How can that be a legal nonconforming use if it's illegal in February of 1998 to even begin such activity? Well, first of all, I'd like to answer that in two ways. First of all, the property right for the adult video sales and for the adult novelty sales vested when they received that license in 1997 in November. But we've lost the forest for the trees here. The district court relied on Mr. Morrison's testimony in order to determine when the adult booths went in the mini motion picture theaters. And Mr. Morrison's testimony and deposition was from the beginning. Now, beginning 20 years in advance when this deposition is being taken, he says from the beginning. But you had code people who went in there who also gave depositions who testified that if, in fact, those booths were there when the business was operating in its inception from the beginning, they would have seen it. And they said they did not see it. Further, in the city's complaint, answer to our complaint, and in their counterclaim, paragraph 38 of their counterclaim, they say based on information or belief that the mini motion picture theaters opened up in 1998 or 1999. So when they took Mr. Morrison's deposition, they got a windfall from somebody who's trying to relate back 20 years earlier. But they knew because they put in their complaint it was either 1998 or 1999. They knew themselves that it wasn't from the inception. And am I right that the city inspectors couldn't be any more accurate than Mr. Morrison was as to the dates on which they actually conducted the inspection? Well, theirs is a viewing. They didn't say what date it went in. They said when they went in there, they didn't see the mini motion picture theater. But we don't know when they went in there. That was after it was open. We do know that. Okay. So therefore, they're not saying beginning whatever. They're saying when we went in there, they weren't there. And because it wasn't there, then, I mean, either it is or it isn't. So we've, like I said, we lost the forest for the trees by determining that, in fact, it was from the inception. The record is not clear on that point at all. I would also like to point out that there was a 2,000 letter from a councilwoman to the code people saying go in there and inspect. Go in there and inspect the premises. I am hearing what's going on in there. And the city in the 1998 lawsuit did not supplement any of their pleadings whatsoever to say, hey, these things are going in there. They need to contest this. They let that lie, the fact that these things were going on. Cheshire never hid what was going on. But you cannot say that it started in February of 1998. The record is too unclear for that. What we can say, their rights vested when they got their occupational license or business license in 1997 in November, when they actually violated that and expanded their legal nonconforming use is something that I don't know if we'll ever know the exact date. But we cannot say that it was from the inception on the day they opened. Thank you. Thank you, counsel. And the next case is.